# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| BAUDAX BIO, INC. | : | Case No. 24-10583 (MDC) |
| | : | |
| Debtor | : | |

### MOTION OF DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND COMPENSATION OF INTELLECTUAL PROPERTY COUNSEL IN THE ORDINARY COURSE OF BUSINESS

Baudax Bio, Inc. (the "Debtor"), by and through its counsel, Smith Kane Holman, LLC, hereby moves this Court for the entry of an order authorizing the Debtor to retain and compensate Three10 Consulting, LLC as intellectual property counsel in the ordinary course of business. In support of this motion, the Debtor avers as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This is a core proceeding under 28 U.S.C. § 157(b).

### Background

3. The Debtor filed a voluntary petition pursuant to chapter 11 of the United States Bankruptcy Code on February 22, 2024 (the "Petition Date").

4. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request for the appointment of a trustee or examiner has been made in this chapter 11 case and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

**The Debtor**

6. The Debtor is a publicly traded biotechnology company based out of Malvern, Pennsylvania whose stock currently trades on the Over-the-Counter (OTC) markets under the symbol BXRX.

7. In the period leading up to the filing of its chapter 11 case, the Debtor focused on the development of two classes of drugs: (1) T cell receptor ("TCR") therapies utilizing human regulatory T cells ("Tregs"), and (2) Neuromuscular Blocking Agents ("NMBs") and an associated reversal agent.

8. Accordingly, the Debtor's primary asset is a portfolio of patents (the "Patent Portfolio") related to its TCR therapies and NMBs, a list of which has been appended to the Debtor's Schedule A/B.

9. To maintain the validity and value of its patents, the Debtor requires the services of intellectual property counsel.

10. In addition to payment of patent fees at the appropriate intervals, maintenance of a patent portfolio typically requires counsel to respond to correspondence from the U.S. Patent and Trademark Office ("PTO"), such as formal Office Actions and other PTO communications, coordinate with foreign associates regarding maintenance of any international patents, and generally ensuring that no patents or patent applications are deemed abandoned.

11. Prior to this chapter 11 case, the Debtor employed DLA Piper as its intellectual property counsel. To constrain administrative costs in this case, the Debtor has decided to employ more affordable intellectual property counsel to maintain its Patent Portfolio going forward.

12. Accordingly, the Debtor has reached an agreement with Three10 Consulting, LLC ("Three10") for the provision of intellectual property legal services. Three10 has agreed to perform all legal work necessary to maintain the Debtor's intellectual property rights for a monthly flat rate of $3,500.00. To facilitate a smooth transition of counsel, DLA Piper has also agreed to maintain the Debtor's intellectual property docket for six months, free of charge, while Three10 will perform all substantive work required to maintain the Debtor's Patent Portfolio.

13. The Patent Portfolio maintenance required by the Debtor is unrelated to this chapter 11 case and is necessary to preserve the value of the Debtor's Patent Portfolio, which in the aggregate is the Debtor's only valuable asset apart from $48,479.58 in funds held on the Petition Date.

14. The Debtor's Patent Portfolio (and available funds) are both encumbered by the blanket lien of MAM Eagle Lender, LLC ("Marathon"), who holds the largest claim—and only secured claim—against the Debtor.

15. The Debtor and Marathon are finalizing the approval by Marathon for the Debtor to use cash collateral, including the expenditure of $3,500 per month as a flat fee for Three10's services as intellectual property counsel.

**Relief Requested**

16. As stated, the Debtor has regularly retained intellectual property counsel in the ordinary course of its prepetition business. Such counsel has provided legal services unrelated to this chapter 11 case, including non-bankruptcy maintenance of the Debtor's Patent Portfolio.

17. The Debtor seeks authorization, in its sole discretion, to retain Three10 as intellectual property counsel and compensate Three10 on a postpetition basis in the amount of

$3,500 per month, without the need for Three10 to file formal application for retention and compensation pursuant to sections 327, 328, 330, and 331 of the Bankruptcy Code.

## Basis for Relief

18. The Debtor respectfully submits that the postpetition retention and compensation of Three10 is in the best interests of its estate, creditors, and other parties-in-interest. As it has regularly and continuously employed intellectual property counsel prior to this chapter 11 case, the Debtor must do so postpetition in order to maintain and preserve its Patent Portfolio.

19. In determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code, and therefore must be retained subject to court approval, courts consider the following factors:

   a. whether the entity controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization;

   b. whether the entity is involved in negotiating the terms of a plan of reorganization;

   c. whether the entity is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

   d. whether the entity is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate;

   e. the extent of the entity's involvement in the administration of the debtor's estate; and

   f. whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the term.

In re First Merchants Acceptance Corp., 1997 Bankr. LEXIS 2245 at *8-9 (Bankr. D. Del. Dec. 15, 1997) (noting that while not exclusive, the foregoing list reflects "many of the considerations that have impacted judicial decisions in this area"); see also In re Johns-Manville Corp., 60 B.R. 612, 619-620 (Bankr. S.D.N.Y. 1986) (only those professionals "who play an intimate role in the

reorganization of the debtor's estate," rather than "the mechanics of the debtor's business operations," require approval under section 327); In re That's Entm't Mktg. Group, 168 B.R. 226, 230 (Bankr. N.D. Cal. 1994) (only the retention of professionals whose duties are central to the administration of the estate require prior court approval under section 327).

20. The First Merchants factors must be "weighed against each other and considered in toto;" no single factor is dispositive. See First Merchants, 1997 Bankr. LEXIS 2245 at *10. Considering all of the factors, the Debtor does not believe that Three10 is a "professional" within the meaning of section 327. Specifically, Three10 will not be involved in the administration of this chapter 11 case, but instead will provide discreet legal services related to the maintenance of the Debtor's Patent Portfolio—which legal services had been provided prepetition by non-bankruptcy professionals. Nevertheless, in an abundance of caution, the Debtor seeks the relief requested herein for retention and payment of Three10 to avoid any subsequent controversy with respect thereto.

21. Bankruptcy Courts in this district have routinely granted the same or similar relief to other chapter 11 debtors. See, e.g., In re Vascular Access Centers, L.P., 19-17117 (AMC), dkt. no. 258 (Bankr. E.D. Pa. Feb. 24, 2020); In re Please Touch Museum, No. 15-16558 (JKF), dkt. no. 120 (Bankr. E.D. Pa. Oct. 15, 2015); In re The Philadelphia Orchestra Ass'n, No. 11-13098 (ELF), dkt. no. 162 (Bankr. E.D. Pa. May 27, 2011).

22. The Debtor represents that: (a) the retention of Three10 is necessary for the maintenance of the Debtor's Patent Portfolio; (b) the monthly fee paid to Three10 will not exceed $3,500.00 and is believed by the Debtor to be reasonable and or below market rate; and (c) except as may be disclosed herein, Three10 will not perform substantial bankruptcy-related

services without filing an application with this Court for separate retention as a non-ordinary course professional.

23. The Debtor does not believe that Three10 has an interest materially adverse to the Debtor, its creditors, or other parties in interest. Attached to this Motion is a declaration from Three10 regarding any such adverse interests. There are no prepetition amounts owing to Three10.

**Notice**

24. The Debtor has provided notice of this Motion via first-class mail, postage prepaid to: (a) the Office of the United States Trustee for the Eastern District of Pennsylvania; (b) counsel for the Debtor's only secured creditor, MAM Eagle Lender, LLC; and (c) all parties entitled to notice pursuant to Local Rule 2014-1(a).

WHEREFORE, the Debtor hereby requests that this Court enter an order authorizing the Debtor to retain and compensate Three10 in the monthly amount of $3,500 for intellectual property legal services, and granting such other and further relief that the Court deems just and proper.

SMITH KANE HOLMAN, LLC

Date: March 21, 2024

By: /s/ Nicholas M. Engel
Nicholas M. Engel, Esquire
David B. Smith, Esquire
112 Moores Road, Suite 300
Malvern, PA 19355
(610) 407-7215 Phone
(610) 407-7218 Fax
nengel@skhlaw.com
*Counsel to Debtor*